J-A12006-26
J-A12007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: F.B., A MINOR | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |
| | : |
| APPEAL OF: J.B., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 3233 EDA 2025 |

Appeal from the Order Entered November 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000507-2022

| | |
|---|---|
| IN THE INTEREST OF: C.B., A MINOR | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |
| | : |
| APPEAL OF: DHS | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 3267 EDA 2025 |

Appeal from the Order Entered February 11, 2026
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000505-2022

| | |
|---|---|
| IN THE INTEREST OF: F.L.B., A MINOR | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |
| | : |
| APPEAL OF: J.B., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 3234 EDA 2025 |

Appeal from the Decree Entered November 19, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000402-2024

| | |
|---|---|
| IN THE INTEREST OF: C.R.B., A MINOR | : IN THE SUPERIOR COURT OF<br>:       PENNSYLVANIA<br>:<br>: |
| APPEAL OF: DHS | :<br>:<br>:<br>:<br>:<br>:<br>: |
| | : No. 3268 EDA 2025 |

Appeal from the Decree Entered November 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000401-2024

| | |
|---|---|
| IN THE INTEREST OF: E.B., A MINOR | : IN THE SUPERIOR COURT OF<br>:       PENNSYLVANIA<br>: |
| APPEAL OF: DHS | :<br>:<br>:<br>:<br>:<br>:<br>: |
| | : No. 3269 EDA 2025 |

Appeal from the Order Entered February 11, 2026
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000506-2022

| | |
|---|---|
| IN THE INTEREST OF: E.R.B., A MINOR | : IN THE SUPERIOR COURT OF<br>:       PENNSYLVANIA<br>: |
| APPEAL OF: DHS | :<br>:<br>:<br>:<br>:<br>:<br>: |
| | : No. 3270 EDA 2025 |

Appeal from the Decree Entered November 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000403-2024

J-A12006-26
J-A12007-26

BEFORE:   LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANUM BY SULLIVAN, J.:                    **FILED JULY 14, 2026**

In these related appeals,[1] J.B. ("Mother") appeals from the decree terminating her parental rights to her daughter, F.B., and the Philadelphia Department of Human Services ("DHS") appeals from the order denying its petition to terminate Mother's parental rights to daughters C.B. and E.B.[2] Because the trial court failed to prepare opinions explain its reasoning for granting termination as to J.B. in one case, and declining to terminate as to C.B. and E.B. in the other, we remand for the trial court to prepare opinions fully analyzing the facts in relation to the termination statute, 23 Pa.C.S.A. § 2511(a) and (b), as to F.B. and C.B. and E.B.

We briefly summarize the facts critical to the disposition of these cases. Mother lost her husband ("Father", collectively, "Parents") when he died suddenly in May 2022.  That month, DHS received a report concerning the family home, where Mother lived with three or her five daughters.[3]  C.B. was

_____

[*] Former Justice specially assigned to the Superior Court.

[1] We have consolidated these appeals for disposition because the facts and legal issues in each appeal are similar.

[2] Where appropriate, we refer to F.B., C.B., and E.B. collectively as "the Children."

[3] Mother later gave birth to a sixth daughter, G.B., whom she later asked to have taken into DHS custody.

- 3 -

eight years old, E.B. was seven years old, and F.B. was five years old.[4]  DHS assessed the children as safe and implemented a safety plan.  Days later, Mother entered inpatient substance abuse treatment and her family put C.B., E.B., and F.B. in the care of DHS.  C.B. and E.B., who are both autistic, were placed with the same foster family; F.B. was placed with a different family.

On October 15, 2024, DHS filed petitions to terminate Mother's parental rights to the Children.  Over the course of the next year, the trial court conducted six days of hearings on the petitions.  On November 17, 2025, the trial court ruled from the bench that it found DHS failed to establish the application of (a)(1), (5), and (8), but had proved (a)(2), then proceeded in less than two pages of testimony presented an unclear section (b) analysis on all three children, the court then granted termination as to F.B. but denied termination as to C.B. and E.B.

The right to "raise one's children has long been recognized as one of our basic civil rights[, and] the complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take." ***In re R.I.S.***, 36 A.3d 567, 572 (Pa. 2011) (plurality) (citations omitted).  Because this right is so fundamental and its termination so serious, our Supreme Court has held that a judicial decree extinguishing such rights must be based solely

_____

[4] Mother's two older daughters lived in a separate part of the house with maternal relatives.

on competent evidence.  *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021) (citations omitted).  Further, trial courts must conduct a searching inquiry commensurate with the gravity of the decision and avoid "a mechanical application of the law regarding the termination of parental rights."  *In re L.A.K.*, 265 A.3d 580, 593 (Pa. 2021).  An involuntary termination of parental rights is so consequential for a child and a parent that our Supreme Court has likened it to the "death penalty."  *In re K.T.*, 296 A.3d 1085, 1111 (Pa. 2023) (citation omitted).

> Our standard of review of termination decisions is as follows:
>
> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination."  *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015)

(citation omitted); *see also T.S.M.*, 71 A.3d at 267. Furthermore, the "trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Regarding the section 2511(b) best interest analysis, this Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is

nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the [Orphans' C]ourt must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship . . . .

In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (internal citations, quotation marks, brackets, and indentation omitted). Although no formal bonding evaluation is required under the statute, *see In re Z.P.*, 994 A.2d 1108, 1121 (Pa. 2010), such an evaluation can be extremely useful to a trial and an appellate court in assessing the nature of the bond, if any, between parent and child.

Here, the trial court conducted six separate days of hearings in the course of one year regarding these children. However, the court did not prepare a substantive opinion to aid our review. Rather, the court provided us with only a three-page Notice of Compliance with Rule 1925(a) that directed us to portions of the hearing transcripts to discern its reasons for its termination decisions. *See* Notice of Compliance, 1/7/25. This testimonial road map allows the appellate court to review testimony but does not allow us to determine the crucial reasoning or conclusions of the court based on the

- 7 -

testimony. This is especially necessary in termination matters where the legal conclusions differ between siblings. This is not a case in which we are willing to forego a formal opinion addressing the competing claims of all the parties. The trial court's decisions have a substantial, lasting impact on the Children, and we require a thorough explanation of a trial court's reasoning in termination cases. That need is especially compelling here, where the trial court made different termination decisions regarding F.B. than C.B. and E.B., without a detailed explanation for its conclusions. Without a full explanation of the court's reasoning, we cannot review the court's exercise of discretion in this matter of critical importance to Mother, children, and foster families.

Accordingly, we remand these cases to the trial court for it to prepare supplemental opinions, within thirty days of the date of the remittal of the certified record, that fully explain its decisions as to sections (a) and (b) granting termination as to F.B., and denying termination as to E.B. and C.B. Mother and DHS will then have thirty days from the filing of the trial court's opinion to file principal briefs for Appellant in their respective appeals in this Court, and fourteen days to file responsive briefs for Appellee. Any reply briefs will only be permitted by permission of this Court.

Case remanded. Jurisdiction retained.